IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ZEKEE RAYFORD,<br>　　　*Plaintiff*<br><br>-vs-<br><br>CITY OF SCHERTZ, MICHAEL R.<br>HANSEN, FRANK CHAVARRIA,<br>MEGAN FENNESY, DANIELLE APGAR<br>　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-22-CV-01328-XR |

**ORDER ON REPORT AND RECOMMENDATION**

On this date, the Court considered United States Magistrate Judge Henry J. Bemporad's Report and Recommendation in this case. ECF No. 52. After careful consideration, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Report and Recommendation and **GRANTS** Defendant Officers Frank Chavarria, Megan Fennesy, and Danielle Apgar's Motion for Summary Judgment.

**INTRODUCTION**

In November 2020, Plaintiff led police on a nighttime car chase through a residential neighborhood, after allegedly running a red light. He pulled into his—unbeknownst to Defendant Officers—driveway, got out of his car with his hands up, but then bolted away towards the porch. Officer Chavarria ran after Plaintiff, tasing him once before bringing him to the ground. After nearly a minute of struggle and attempts to gain compliance, during which he was tased again by Officer Chavarria and kicked multiple times by Officer Fennesy, Plaintiff was arrested and handcuffed.

Plaintiff brought a host of claims under Section 1983, including for excessive force under the Fourth Amendment. In July 2024, Defendant Officers moved for summary judgment, asserting

1

qualified immunity.[1] ECF No. 40. On December 11, 2024, Magistrate Judge Bemporad issued the Report and Recommendation. ECF No. 52.

While acknowledging that the officers were justified in using "at least *some* force," *id.* at 16, the Magistrate Judge recommended the motion be denied in part as to Plaintiff's excessive force claims against Officer Chavarria for tasing him when he was on the ground and against Officer Fennesy for kicking him six times. *Id.* at 22. In all other respects, the Magistrate Judge recommended the motion be granted. *Id.*

This was based on two key findings. First, that Plaintiff—at the time of Officer Chavarria's subsequent taser use—was "quiet and sitting still" and "not actively resisting." *Id.* at 6, 19. Second, that Plaintiff—at the time of Officer Fennesy's six kicks—was already "rolled over onto his stomach to be handcuffed" and screaming out "okay, okay; I'm on the ground," signaling his submission to Defendants and his willingness to be handcuffed without any furtherance resistance. *Id.* at 20.

The Court adopts many of the Magistrate Judge's findings, but departs here. At the time of Officer Chavarria's subsequent taser use, Plaintiff—who had fled from police and was suspected of committing a crime—was resisting arrest and was non-compliant with orders. Under these circumstances, whether Plaintiff appeared to surrender for a few seconds does not alter the excessive force inquiry. And so Officer Fennesy's six kicks—contemporaneous with the appearance of surrender—were not excessive either. Accordingly, Plaintiff's claims fail.

---

[1] The Court previously dismissed Plaintiff's claims against the City of Schertz in March 2023, ECF No. 15, and Plaintiff did not amend. Defendant Michael R. Hansen, the former Chief of Police of the City of Schertz, has never been served and has not appeared. ECF No. 1-1 at 2. Throughout the parties' summary judgment briefing, neither side has mentioned nor addressed the claims against Defendant Hansen, which are premised on *Monell* liability and the same grounds for which the Court dismissed the City of Schertz. Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendant Hansen for the same reasons.

**DISCUSSION**

I. **Legal Standard**

A party may serve and file objections to a report and recommendation within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive [sic] or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

Officers Chavarria and Fennesy timely filed their objections. ECF No. 54. Plaintiff responded, but did not object to the Report and Recommendation.[2] ECF No. 55.

II. **Analysis**

A. Factual Findings

1. *Legal Standard*

At summary judgment, the Court "view[s] the facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Factual allegations arising out of events captured on video, however, are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). "When

---

[2] The Report and Recommendation's dismissal of Plaintiff's claims besides excessive force is not clearly erroneous, and so the Court **ADOPTS** these findings.

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. But "to the extent that any material fact dispute remains after viewing the facts in light of the available video evidence, the court should deny summary judgment on grounds of qualified immunity." *Bagley v. Guillen*, 90 F.4th 799, 800 (5th Cir. 2024).

### 2. *Analysis*

Given that Officers Chavarria and Fennesy object to the Magistrate Judge's finding that Plaintiff was not "actively resisting," the Court reviews this *de novo*.[3] The Court adopts and incorporates many of the Magistrate Judge's factual findings, which are repeated for completeness.

**Red Light.** On the evening of November 2, 2020, Defendant Officers Megan Fennesy and Frank Chavarria were on patrol together in Schertz, Texas. ECF Nos. 40-5 at 1; 40-6, at 1. Driving ahead of the officers was Plaintiff Zekee Rayford, then 17 years old. ECF No. 50 at 3. Both officers affirm by affidavit that they observed Plaintiff commit a traffic violation in their presence by running a red light. ECF Nos. 40-5 at 2; 40-6 at 1. Officer Fennesy also asserts that she "estimated" Plaintiff was "speeding 50 mph in a 35 mph zone." ECF No. 40-6 at 1. In his own affidavit, Plaintiff disputes that he committed any offenses before the officers began to initiate the traffic stop. ECF No. 50-1 at 2. The video footage is inconclusive on this point. Ex. A. at 0:33–52.[4]

**Nighttime Car Chase.** What happened next is another story: it is all captured on video. Officer Fennesy activated the emergency lights on her police cruiser to initiate a traffic stop. Ex.

---

[3] Plaintiff argues the Court need not consider this objections because Defendants failed to properly object to the Report and Recommendation. ECF No. 55 at 1. But Defendants contest the Report's factual findings and argue that Plaintiff *was* "actively resisting." ECF No. 54 at 2. Even if the Court reviewed for clear error, it would reach the same conclusion.

[4] The Court refers to Ex. A–D instead of their ECF designations, ECF Nos. 40-1, -2, -3, -4.

A. at 1:17. Rather than pulling over, Plaintiff kept driving, proceeded to turn left at a controlled intersection, and then accelerated away at a high speed. *Id.* at 1:18–43. Officer Fennesy pursued him and activated the sirens on her cruiser—in addition to the lights which were already flashing—but Plaintiff still did not stop. *Id.* at 1:44–2:00. Plaintiff did slow down enough to turn into a gated residential area, but he then continued to speed away. *Id.* at 2:01–08. Shortly thereafter, Plaintiff pulled into a driveway and stopped the car. *Id.* at 2:21–27. Officer Fennesy pulled in behind him, blocking his car in the driveway with her cruiser. *Id.*

After stopping his car, Plaintiff did not stay in his vehicle and await a command. Instead, Plaintiff quickly got out of the car, at which point Officers Fennesy and Chavarria exited the cruiser and drew their weapons on him. *Id.* at 2:28–29. The officers ordered Plaintiff to show his hands and to get on the ground. Ex. B. at 0:48–54. Plaintiff briefly faced the officers with his hands raised, before turning and running toward the front door of the house. Ex. A. at 2:34–38. It turned out that Plaintiff lived at the house with his parents, but the officers did not know that at the time. Officer Chavarria briefly intercepted Plaintiff, but Plaintiff managed to break loose and proceed onto the front porch of the house. Ex. A. at 2:36–43; Ex. B. at 0:54–1:00.

**A Struggle Ensues.** Officer Chavarria followed Plaintiff onto the front porch and discharged his taser at him from a distance. Ex. B. at 1:00–02; Ex. D. at 0:08–10. While it is unclear from the video whether the taser had any effect, Officer Chavarria affirms in his affidavit that "it did not make contact" with Plaintiff. ECF No. 40-5 at 2. In his own affidavit, Plaintiff does not assert that he was tased at this time. *See* ECF No. 50-1 at 2.

After the taser projectile apparently missed Plaintiff, he began banging on the front door and screaming for his dad to help him. Ex. B. at 1:02–05; Ex. D. at 0:10–13. Officer Chavarria then pulled Plaintiff to the ground; the officers then fruitlessly tried to handcuff Plaintiff as he

5

continued to scream out for help. Ex. A. at 2:45–48; Ex. B. at 1:06–26; ECF No. 40-5 at 2. During the struggle, Officer Fenessy kneed Plaintiff once, eliciting a groan from Plaintiff. Ex. D. at 0:15–17. After Officer Chavarria pulled Plaintiff to the ground, Officers Chavarria and Fennesy continued to tell him to "get on the ground." Ex. D. at 0:15–0:17. After the third time, Plaintiff responded; "I'm on the ground, I'm on the ground" *Id.* at 0:19–0:20. During this time, Defendant Officer Danielle Apgar arrived on the scene and joined her colleagues on the porch. *Id.* at 0:17–0:21. Officer Apgar also yelled at Plaintiff to "get on the ground." *Id.* at 0:17–0:18.

True, Plaintiff was "on the ground." But he was resisting. For one, Officers Chavarria and Fennesy were unable to control his hands. While Officer Fennesy grabbed Plaintiff's *right* hand, she also yelled "you got his hands[?]." *Id.* at 0:20. Officer Chavarria said "yes," *id.* at 0:20–0:21, but he did not have control of Plaintiff's *left* hand. This was because, while on the ground, Plaintiff was intermittently lying on his back or sitting up; he kept his arms tucked close to his torso, pulling them back away from the officers as they tried to maneuver him onto his stomach or pull his hands behind his back to be handcuffed. Ex. D. at 0:18–34. He also used his legs as a barrier between himself and Officer Chavarria, and at one point used them to push Officer Chavarria away from him. Ex. C. at 0:52; Ex. D. at 0:22–26.

Plaintiff also continued to move his right hand that Officer Fennesy had a hold on. *Id.* at 0:21–0:25. After being told again to get "on the ground," *id.* at 0:23–0:24, Plaintiff responded "bro, chill" and then said, "what are ya'll f***ing doing," *id.* at 0:24–0:28. At the time, Plaintiff continued to move around on the ground and resist Officer Chavarria and Fennessy's control. After Officer Apgar told Plaintiff to "stop fighting," *id.* at 0:28–0:29, Plaintiff used his still-unrestrained left hand to knock on the front door. *Id.* at 0:29–0:31. After Officer Fennesy saw this, she attempted to grab it and pulled it towards her. *Id.* at 0:31–0:33. Officer Chavarria also ordered him twice to

6

"stop resisting." Ex. B. at 1:22–26; Ex. D. at 0:32–34. Plaintiff responded, "I'm not," Ex. D. at 0:32–0:33, but his continued movement demonstrates otherwise.[5] *Id.* at 0:32–0:34.

**Officer Chavarria's Subsequent Taser Use.** Officer Fennesy finally advised Plaintiff that he was under arrest and ordered him to turn over onto his stomach and place his hands behind his back so they could handcuff him. Ex. B. at 1:27–32; Ex. D. at 0:35–39. Right before, Officer Chavarria turned the other way to retrieve his taser, which was lying on the floor behind him. Ex. D. at 0:34–0:38. Officer Chavarria picked it up, checked it, *id.* at 0:38–0:39, and then turned around and tased Plaintiff.[6] *Id.* at 0:40–0:41.

Plaintiff lurched forward towards Officer Chavarria in a crunched-up position. *Id.* at 0:40–0:42. Officer Chavarria then applied the taser a second time. *Id.* at 0:43. Plaintiff continued to stay in his crunched-up position, while Officer Fennesy attempted to tackle him down from his right side and maneuver him onto his stomach. *Id.* at 0:43–0:45. Only after the third time, *id.* at 0:46–0:47, did Plaintiff say "ok, ok, I'm on the ground."[7] *Id.* at 0:47–0:49.

Once "on the ground," the video shows Plaintiff with his left hand over his left head, *id.* at 0:48, but it is inconclusive whether his right hand was over his head as well. Yet Plaintiff continued to move his right leg in a circular motion, which Officer Fennesy then pushed down to restrain. *Id.* at 0:48–0:49.

---

[5] Plaintiff, despite the video evidence, states in his affidavit that he complied with every order and never put up any resistance. ECF No. 50-1 at 2.

[6] During the five to six seconds after Officer Fennesy told Plaintiff he was under arrest and when Officer Chavarria applied his taser, the video footage does not show Plaintiff moving. But Officer Chavarria was looking away and did not see Plaintiff during this time.

[7] This was the first time Plaintiff said he was "on the ground," over thirty seconds *after* Officers Chavarria and Fennesy first ordered him to do so. At this point, Officer Apgar—who had been standing back—also got on the ground to pull Plaintiff's arms behind his back. *Id.* at 0:45–1:00.

7

**Officer Fennesy's Six Kicks.** Officer Apgar then tried to take control of Plaintiff's arms. *Id.* at 0:50–0:58. And Officer Fenessy proceeded to kick Plaintiff's right leg six times. She began her kicks less than one second after Plaintiff said "ok, ok, I'm on the ground," and continued for seven seconds. *Id.* at 0:49–0:56. Officer Fennesy stopped kicking when the front door of the house opened, and the officers were confronted by Plaintiff's family. *Id.* at 0:55–1:00. Officer Fennesy told Plaintiff's family that he was under arrest, *id.* at 0:57–59, and then finally proceeded to handcuff him, *id.* at 1:24–38.

While on the porch, Plaintiff called for his dad at least eleven times. But his dad did not appear for nearly a minute, and no evidence in the record suggests that Officers Chavarria, Fennesy, or Apgar knew he was inside the home.

### B. Qualified Immunity

Because Officer Chavarria and Officer Fennesy object to the Report and Recommendation's denial of qualified immunity, the Court reviews it *de novo*.

#### 1. *Applicable Law*

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong asks "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [constitutional] right.'" *Id.* (citation and internal quotation marks omitted). The second asks "whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 572 U.S. at 655 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Because Plaintiff fails at prong one, the Court need not address prong two. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("A court may rely on either prong of the defense in its analysis.").

## 2. *Excessive Force*

### a. Applicable Law

Whether an officer uses excessive force depends on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts also consider "the relationship between the need [for force] and the amount of force used." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citation omitted). "Facing an uncooperative arrestee, officers properly use 'measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance.'" *Betts v. Brennan*, 22 F.4th 577, 583 (5th Cir. 2022) (quoting *Joseph*, 981 F.3d at 332–33)).

Excessive force claims are "necessarily fact-intensive," and whether force is excessive or unreasonable "depends on the facts and circumstances of each particular case." *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018) (citation and internal quotations omitted). The reasonableness of the force used must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In determining whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them" the court must be mindful that "police officers are often forced to make split-second judgements—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

### b. Officer Chavarria

Officer Chavarria argues his subsequent use of the taser did not violate Plaintiff's rights to be free of excessive force. ECF No. 54 at 3. The Court agrees.

The first *Graham* factor favors Officer Chavarria. Plaintiff "led police on a dangerous car chase through a residential area," *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022), and then evaded and resisted arrest. So do the second and third factors, which implicate the same facts. Because Plaintiff was "actively resisting arrest," he posed "an immediate threat to the safety of the officers or others." *See Escobar v. Montee*, 895 F.3d 387, 396 (5th Cir. 2018) ("[T]he third *Graham* factor . . . largely folds into the second. If [the suspect] may have posed a threat, then he also might have attempted to flee.").

The video footage reveals a "tense, uncertain, and rapidly evolving" situation, *Graham*, 490 U.S. at 396, during which Plaintiff—after leading police on a car chase at night in a residential neighborhood—ran away from the officers, physically resisted arrest, and disregarded their orders.

After Plaintiff was first tased, he continued to resist. When Officer Chavarria attempted to grab Plaintiff's left hand, he could not do so due to Plaintiff's continued movement away from him. Plaintiff not only used his legs as a barrier between himself and Officer Chavarria, but at one point used them to push Officer Chavarria away. Officer Apgar told Plaintiff to "stop fighting," but Plaintiff used his still-unrestrained left hand to knock on the door and continued to evade their grasp. Only after Officer Chavarria, mere seconds later, again ordered Plaintiff to "stop resisting," did Officer Chavarria turn back to his taser to restrain Plaintiff.

The Fifth Circuit holds, as here, that when "a suspect resists arrest or fails to follow police orders," the use of a taser is not excessive. *Betts*, 22 F.4th at 583 (citation omitted); *see also Beroid v. LaFleur*, No. 22-30489, 2023 WL 3034706, at *4 (5th Cir. April 21, 2023) (per curiam) ("As we have repeatedly held, the use of a taser is a reasonable level of force when a suspect is resisting arrest"); *Poole v. City of Shreveport*, 691 F.3d 624, 626, 629 (5th Cir. 2012) (holding that use of taser was not excessive where the arrestee resisted arrest and the officers ceased use of the taser

once the arrestee was handcuffed and subdued). Indeed, Officer Chavarria attempted to restrain Plaintiff for more than thirty seconds before his subsequent taser use. *See Trammell*, 686 F.3d at 342 ("the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need").

The Magistrate Judge's characterization of Plaintiff implies passive resistance. ECF No. 52 at 6, 19 ("not actively resisting" and "quiet and sitting still"). True, "force may be less justified or unjustified when a suspect engages in 'passive resistance.'" *Joseph*, 981 F.3d at 333. And "the line between active and passive resistance is sometimes hazy," *Betts*, 22 F.4th at 583, as it can be "unclear at what point passive resistance becomes the sort of active resistance which justifies force." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). Noncompliance alone does not rise to the level of active resistance. *Starr v. Marion Cnty.*, 573 F. Supp. 3d 1076, 1085 (S.D. Miss. 2021). Even "pulling [one's] arm out of [an officer's] grasp, *without more*, is insufficient to [establish] an immediate threat to the safety of the officer. *Tucker v. City of Shreveport*, 998 F.3d 165, 178 (5th Cir. 2021) (citation omitted).

Here, there is the "essential 'more.'" *Id.* Plaintiff was not merely noncompliant; he led police on a nighttime car chase and evaded and resisted arrest up to mere seconds before Officer Chavarria's subsequent taser. He questioned the officers' attempts to get "on the ground" and physically resisted Officer Chavarria's attempts to restrain him, by both pulling his arm away *and* pushing Officer Chavarria away with his legs. This "prevented [Officer Chavarria and Officer Fennesy] from completing a lawful arrest."[8] *Cloud*, 993 F.3d at 386.

---

[8] It is true that at this time, Plaintiff was not yet told he was "under arrest." But "reciting 'you're under arrest' is not necessary to put a suspect on notice that he is being arrested and resistance can be met with reasonable force." *Beroid*, 2023 WL 3034706, at *3.

Even if the video footage could be viewed to show that Plaintiff appeared to surrender in the seconds before Officer Chavarria tased him, his claim for excessive force would still fail for two reasons.

First, in the five to six seconds before Officer Chavarria's subsequent taser use, the video footage shows that Officer Chavarria was not looking at Plaintiff, and so he did not see any appearance of surrender. Instead, Officer Chavarria turned away from Plaintiff to retrieve his taser; his last sight of Plaintiff was when he ordered Plaintiff to "stop resisting." The "relevant 'justification for the use of force' is the officer's reasonable perception of a threat of harm," which "does *not* always require that a suspect be actively resisting, fleeing, or attacking an officer at the precise moment force is used," and it is "reasonable to use defensive force where insufficient time has elapsed 'for the officer to perceive new information indicating the threat was past.'" *Salazar*, 37 F.4th at 283 (citing *Lytle v. Bexar County*, 560 F.3d 404, 414 (5th Cir. 2009)).

Thus, the point at which to evaluate the reasonableness of the force is Officer Chavarria's perception of the threat *when he turned around to retrieve his taser*. At this time, Plaintiff was still moving on the ground, his left hand was unrestrained, and Officer Chavarria had again ordered him to "stop resisting." Even if Plaintiff appeared to stop resisting in the few seconds it took Officer Chavarria to turn around and grab his taser, this period was insufficient for Officer Chavarria to perceive "new information indicating the threat was passed." *Id.* (quoting *Lytle*, 560 F.3d at 414). Indeed, it was only *after* Officer Chavarria applied his taser that Plaintiff, for the first time, stated "ok, ok, I'm on the ground."

Second, the Fifth Circuit directs that the "relevant inquiry is whether—despite the *appearance* of unambiguous surrender—'an officer [would] have reason to doubt the suspect's compliance and still perceive a threat.'" *Id.* at 283 (quoting *Escobar*, 895 F.3d at 395). In *Salazar*,

the Fifth Circuit stated that "a suspect cannot refuse to surrender and instead lead police on a dangerous hot pursuit—and then turn around, appear to surrender, and receive the same Fourth Amendment protection from intermediate force [including tasers] he would have received had he promptly surrendered in the first place." *Id.* at 282–83 (holding that the ten-second tasing of a suspect who "remained on the ground" two seconds before the officer got to him was not excessive force). This is the case here, even if Plaintiff appeared to surrender. *See id.* at 282 ("[W]hen a suspect has put officers and bystanders in harm's way to evade capture, it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy. That's especially true when a suspect is unrestrained, in close proximity to the officers, and potentially in possession of a weapon.").

### c. Officer Fennesy

Officer Fennesy argues that her subsequent six kicks were "not excessive under the circumstances, as a matter of law." ECF No. 54 at 3. The Court agrees.

True, Plaintiff was lying prone on his back at the time Officer Chavarria began her kicks. But he continued to move his right leg while on the ground, demonstrating at minimum he was not yet completely restrained, much less subdued or handcuffed. Indeed, after Plaintiff was initially taken down to the ground by Officer Chavarria, he was still able to wrangle out of his grasp. *Cf. Joseph*, 981 F.3d at 335 ("If the suspect lacks *any* means of evading custody—for example, by being pinned to the ground by multiple officers—force is not justified.") (emphasis added).

But like Officer Chavarria, assuming the video shows Plaintiff lying prone on the ground and appearing to stop resisting, Plaintiff's claim still fails.

Officer Fennesy began her kicks within one to two seconds—an "extremely brief period of time"—after Plaintiff, who was not yet handcuffed, turned on the ground. *Lytle*, 560 F.3d at 414

(citation omitted). This timespan was insufficient to perceive "new information indicating the threat was passed." *Salazar*, 37 F.4th at 283 (quoting *Lytle*, 560 F.3d at 414). Similarly, given that Plaintiff had led police on a nighttime car chase through a residential neighborhood at night and evaded and resisted arrest on the porch for nearly a minute, the "relevant inquiry" is whether Officer Fennessy would "have reason to doubt [Plaintiff's] compliance." *Id.* Plaintiff's appearance of surrender, if Officer Fennessy was aware of it, did not necessarily signal submission or a willingness to be handcuffed. Under these circumstances, Officer Fennesy's kicks were not excessive.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 52), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 40).

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall take nothing in this case against Defendants. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 7th day of February, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE